(No. 4456-)

PATRICK BUTLER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed July 8, 1952.*
*Opinion on rehearing filed July 23, 1954.*

D. F. RUMSEY, Attorney for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

DELANEY, J.

Claimant, Patrick Butler, was employed by the Department of Public Works and Buildings, Division of Highways. On July 6, 1950, Mr. Butler was one of a group of maintenance employees engaged in rebuilding shoulders on the right-of-way of Illinois Route No. 142 in Saline County, north of Eldorado. The work was being done at a point approximately four miles north of the junction of Illinois Route No. 142 and Saline County SA Route No. 10. At approximately 2:45 P.M., Mr. Butler was backing a truck loaded with dirt into an area washed out of the highway shoulder. As the truck was backed up to the eroded area, the edge of the shoulder gave way. This caused the back of the truck to fall into the depression. Mr. Butler, thinking the truck would turn over backwards, jumped from the truck cab, and fell to the ground near the edge of the depression. The truck did not turn over, but the front end was raised into the air, and swung around in such a manner that when the front wheels came down, they pinned Mr. Butler's legs to the ground.

The Division had Mr. Butler taken to the Ferrell Hospital Clinic at Eldorado, where Dr. N. A. Thompson treated him.

July 7, 1950, Dr. Thompson reported as follows:

"Patient states that while hauling dirt to dump and fill in a low place on highway No. 142, the earth gave way beneath the truck. Nature of injury—Sprain of left ankle, abrasions. Treatment—Hospitalized. X-Rays—Revealed no fracture. Estimated date of discharge—September 1, 1950. Estimated date patient able to work—September 1, 1950. What permanent disability do you expect?—Apparently none."

On August 21, Dr. Thompson sent the following letter to the Division of Highways:

"The above named patient has complained of pain and swelling of the left ankle since he was hospitalized on July 6, 1950. X-Ray films taken today reveal partial fracture of the left medial malleolus, and also a partial fracture of the left fibula in the lower third. These fractures were identified by the callus formation thrown out from them.

The old X-Ray pictures were re-checked, and we were still unable to identify any fracture in them.

A firm adhesive brace was put on the ankle, and he was advised to use it as little as possible. He should have complete recovery within six weeks."

On October 21, Dr. Thompson submitted his final report:

"X-Rays—Taken August 21, 1950, revealed partial fracture of the left medial malleolus, and also a partial fracture of the left fibula in the lower third."

On May 10, 1952, Dr. John Elder Choisser reported as follows:

"Physical examination on this date reveals that there is definite limitation of plantar flexion of the left foot and the ankle joint of about 40%. There is limitation of dorsi flexion of the left foot at the ankle joint of about 30%. There is approximately 40% limitation of lateral abduction and medial inversion of the left foot at the ankle joint.

It is my professional opinion that the marked limitation of motion of the left ankle joint is due to the old healed fracture of the distal ends of the left fibula and left tibia bones and the accompanying teno-synovitis of the ligaments of the left ankle.

This man has a definite permanent disability of the left leg due to the injury to his left ankle joint area."

The record consists of the complaint, Departmental Report, answer of claimant to Departmental Report, stipulation waiving briefs of both parties, transcript of evidence, and stipulation of medical report of Dr. John E. Choisser between the parties herein.

No jurisdictional question is raised. Respondent and claimant were operating under the Workmen's Compensation Act, and the accident in question arose out of and in the course of the employment.

On July 6, 1950, claimant, a widower, was 63 years of age. There were no children under 18 years of age dependent upon him for support. He earned a total of $2,688.00 in the year preceding his injury.

The compensation rate is the maximum of $15.00 per week. Since the accident occurred subsequent to July 1, 1949, this amount must be increased 50 per cent, or a weekly rate of $22.50.

Mr. Butler was totally disabled because of his injury from July 7 to September 30, 1950, inclusive, a period of 12 2/7 weeks. He was paid full salary in lieu of compensation July 7 through July 31, inclusive, in the amount of $180.64. He was paid compensation at the rate of $22.50 a week from August 1 to September 30, inclusive, in the amount of $196.07. Claimant should have received his compensation rate during the period from July 7 to July 31, which would amount to $80.36. As claimant received $180.64, it is necessary for us to deduct the sum of $100.28 from the award to be granted herein.

From the record before the Court, we are of the opinion that, as a result of the accident on July 6, 1950, claimant has suffered the permanent loss of use of his left leg. Under Section 8 (e-15) claimant will receive 190 weeks at the compensation rate of $22.50 per week, or the sum of $4,275.00, less the overpayment of $100.28, making a total sum of $4,174.78.

An award is, therefore, entered in favor of claimant, Patrick Butler, in the amount of $4,174.78, payable as follows:

$2,076.43, which has accrued, less overpayment of $100.28, or $1,976.15, which is payable forthwith;

$2,198.63, which is payable in weekly installments of $22.50, beginning on July 15, 1952, for a period of 97 weeks, with an additional final payment of $16.13.

The testimony at the hearing before Commissioner Summers was taken and transcribed by Nina Lee Patton of Harrisburg, Illinois, who made charges therefor in the amount of $20.55. These charges appear reasonable and proper.

An award is, therefore, entered in favor of Nina Lee Patton in the amount of $20.55, payable forthwith.

This award is subject to the approval of the Governor, as provided in Section 3 of ''An Act Concerning the Payment of Compensation Awards to State Employees''.

### OPINION ON REHEARING.

FEARER, J.

This cause is before the Court on the petition of respondent for rehearing filed on July 29, 1952, and the order of the Court granting the prayer of the petition for rehearing filed on October 10, 1952. An opinion of this Court was rendered and filed with the Clerk on July 8, 1952.

On June 21, 1954, there was filed in this Court a stipulation wherein claimant by his attorney, and respondent by the Attorney General, Latham Castle, agreed that the medical reports of Gilbert T. Hyatt, M.D., of 1106 West Franklin Street, Evansville, Indiana, who examined claimant on May 16, 1953 and June 2, 1954, should be considered as additional medical evidence in this case, in accordance with the order of the Court entered on October 10, 1952 granting respondent's petition for rehearing, and further giving leave for the submission of such additional medical evidence as either side might desire.

As stated, claimant was examined by Dr. Gilbert T. Hyatt, and medical reports, dated May 16, 1953 and

June 2, 1954, were sent to Mr. Earl McK. Guy, Department of Public Works and Buildings, Springfield, Illinois, and subsequently filed in this cause.

The Court, in its opinion handed down on July 8, 1952, made an award to claimant for the loss of use of his left leg, which, under the Workmen's Compensation Act at that time, was fixed at 190 weeks at his compensation rate of $22.50 per week. From this award was deducted the sum of $100.28, representing an overpayment to claimant, as shown by the record in the case.

In considering this matter, we are confronted with the medical testimony of Dr. John E. Choisser, who testified on behalf of claimant, and also his medical report, which was filed in this cause as a Supplemental Report, dated May 10, 1952.

At the hearing before Commissioner Frank M. Summers on November 1, 1951, Dr. Choisser testified that he examined claimant on September 14, 1951 and August 1, 1951, and took some X-Rays. At that time he learned that Mr. Butler had received injuries to his back and left leg on July 6, 1950, while working for respondent. When examined, claimant complained of stiffness and weakness in his left ankle. Dr. Choisser stated he found there was a limitation of the plantar flexion and dorsi flexion, and lateral abduction of the left ankle. He testified that the limitation of the left ankle was between 25 and 30%, and his examination revealed that the left ankle at the level of the malleoli revealed the left ankle at the distal end to be larger than the right ankle. Anterior-posterior and lateral X-Rays of the left ankle and leg revealed old healed fractures of the distal end of the left tibia and fibula, as well as arthritic changes, which, in his opinion, were due to

trauma. It was further his opinion that Mr. Butler's injury was permanent in its nature.

He testified that both tibia and fibula were fractured, and that there were arthritic changes in both of them. He further testified that claimant had lost the partial use of the left ankle. He was further asked by counsel for claimant:

"Do you have an opinion from the examination and the X-Ray what percentage he has lost because of his injury?"

The doctor testified that it was his professional opinion that Mr. Butler had a 30 to 35% loss of the use of the ankle.

There was no further medical testimony offered by claimant. However, by stipulation, the Supplemental Report, dated May 10, 1952, hereinabove referred to, and signed by Dr. Choisser, was filed with the Court. It revealed that by further physical examination there was a definite limitation of plantar flexion of the left foot and the ankle joint of about 40%. There was a limitation of dorsi flexion of the left foot at the ankle joint of about 30%, and approximately 40% limitation of lateral abduction and medial inversion of the left foot at the ankle joint. He gave as his professional opinion that the marked limitation of motion of the left ankle joint was due to the old healed fracture of the distal ends of the left fibula and left tibia bones, and the accompanying teno-synovitis of the ligaments of the left ankle. He concluded by saying that claimant had a definite permanent disability of the left leg due to the injury in his left ankle joint area.

Dr. Gilbert T. Hyatt's written report, dated May 16, 1953, and based upon his examination of claimant, revealed subjective findings, as follows: Left lower ex-

tremity quite weak; midback region weak and painful, cannot do much bending or lifting; unable to walk on uneven ground; difficulty in walking up or down stairs, and in getting into and out of cars; not able to put much weight on left foot; pain in the left ankle and leg; swelling of left ankle and leg after use; and, interference with rest at night because of pain.

Objective findings were that he walked with a left sided limp, some atrophy of the left thigh and leg. Motions of the left ankle and left tarsal regions were restricted to about half normal. The left knee jerk and ankle jerk were slightly diminished. Sensation was normal. Motions of the spine were a little restricted in all directions. X-Rays of the left ankle showed old healed fractures of the tibia and fibula; a little irregularity of the joint surface of the tibia, and osteoarthritic changes beginning about the ankle joint.

In concluding his report, Dr. Hyatt stated that claimant, Patrick Butler, sustained fractures of the left tibia and fibula at the ankle, and a strain of his back on July 6, 1950, and since that time has had pain and weakness in the left lower extremity and midback region. The fractures have healed, but there is some residual atrophy of the left lower extremity, some restriction of motion of the left ankle, foot, and back, and some traumatic arthritis of the left ankle due to the joint injury. Although his complaints may be somewhat exaggerated, Dr. Hyatt believes that claimant has a true traumatic neurosis superimposed upon his real physical disability. In his opinion, claimant has a permanent partial disability, approximating the loss of three-fourths of his left lower extremity.

He wrote a second report on June 2, 1954, which was based upon his examination of claimant at the

Harrisburg Hospital on May 17, 1954. Subjective findings were that claimant continued to have pain in the left ankle, and up the inner side of the left leg; could not go up or down stairs normally, because the left ankle would not hold him, and he had to hold on to something; the medial aspect of the left ankle tended to give way; and, the left ankle continued to swell when he is on it very much. Findings also revealed that claimant was well developed and nourished; limps on the left lower extremity; and, has no localized tenderness. Dr. Hyatt further stated that from claimant's history he has made no notable improvement since the previous examination on April 10, 1953, and no appreciable changes in the physical examination were noted. Both physically and mentally his condition seemed unchanged from the previous examination.

The measurements of the lower extremities are noted by the chart filed with the Report, dated June 2, 1954. First, we will consider the ankle. There is no variance in the Report between the left ankle and the right ankle, except under eversion, where the right ankle is 10° and the left ankle 5°. Under the heading "Great Toe" have been listed the metatarsophalangeal joint, interphalangeal joint, no difference between the left and right. Measurements of motion between the left and right leg, abduction, right 35°, left 30°; adduction, right 30°, left 25°. Internal rotation, right 15°, left 10°; circumferential measurements (thigh) right 16″, left 15½″. As to all other measurements, they are the same. In the knee the only variance between the left and right is in the measurements of the calf, right 11½″, left 11″.

The evidence reveals that claimant returned to work as a truck driver in October of 1950, and worked until approximately May 10, 1951.

Mr. Butler was disabled because of his injury from July 7 to September 30, 1950, inclusive, a period of 12 2/7 weeks. He was paid full salary in lieu of compensation from July 7 through July 31, inclusive, in the amount of $180.64. He was paid compensation at the rate of $22.50 a week from August 1 to September 30, inclusive, in the amount of $196.07. Claimant should have received his compensation rate of $22.50 per week during the period from July 7 to July 31, which would have amounted to $80.36. As claimant received $180.64, it is necessary to deduct the sum of $100.28 from any award granted herein.

From the record before the Court, and additional supplemental medical reports, we are of the opinion that, as a result of the accident on July 6, 1950, claimant has suffered a partial loss of the use of his left leg. However, in this respect, it is difficult for us to determine from the medical evidence submitted, either by the written reports filed in this cause, or by testimony offered, the percentage of loss of use of the left leg claimant has sustained.

It appears to us that, in referring to the lower extremity of the left leg, the doctors are referring to a line above the ankle joint, and, therefore, we cannot consider that claimant has lost the use of the entire left leg, but will have to endeavor to arrive at a percentage based upon medical findings of the two doctors.

At the time of the injury and the original hearing in this case, Section 8 (e-15) of the Workmen's Compensation Act provided for the payment of compensation for a period of 190 weeks for the permanent loss of use of a leg. Claimant's compensation rate at said time was $22.50 per week.

We are hereby modifying the award previously made, and are entering an award in favor of claimant, Patrick Butler, in the amount of $2,137.50, less the overpayment of $100.28, or a total award of $2,037.22, all of which has accrued, and is payable forthwith.

The former opinion allowed $20.55 to Nina Lee Patton of ¦Harrisburg, Illinois, for transcribing the testimony before the Commissioner. These charges appear reasonable and proper, and, since they have never been satisfied, the sum of $20.55 is herewith ordered paid to Nina Lee Patton.

This award is subject to the approval of the Governor, as provided in Section 3 of ''An Act Concerning the Payment of Compensation Awards to State Employees''.